IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEAN AND MILDRED ANTOINE,    )
                             )
        Plaintiffs,          )
                             )
            v.               )        Case No. 1:07-cv-01518
                             )
U.S. BANK NATIONAL ASSOCIATION, )
TRUSTEE FOR SG MORTGAGE       )
SECURITIES, LLC, et al.,      )
                             )
        Defendants.          )
_____ )

## DEFENDANT RITA TING-HOPPER'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant Rita Ting-Hopper, by and through her undersigned counsel, has moved, pursuant to Fed. R. Civ. P. 12 (b) (6) and Fed. R. Civ. P. 9 (b), to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, or in the alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 56 and avers:

1.    Plaintiffs' Complaint fails to state a claim upon which relief could be granted against Defendant Rita Ting-Hopper, an individual and an attorney.

2.    The grounds for this motion are more fully set forth in the accompanying Memorandum of Points and Authorities filed by Defendant.

Wherefore, Defendant Ms. Ting-Hopper respectfully requests that Plaintiffs' claims

against Ms. Ting-Hopper as counsel be dismissed with prejudice, or in the alternative, judgment

entered in favor of Defendant Rita Ting-Hopper.

Respectfully Submitted,

/s/ James E. Clarke
James E. Clarke, Esq. #460826
L. Darren Goldberg #450336
Draper & Goldberg, PLLC
803 Sycolin Road, Suite 301
Leesburg, Virginia 20175
703-777-7101

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEAN AND MILDRED ANTOINE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01518 |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| TRUSTEE FOR SG MORTGAGE | ) | |
| SECURITIES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RITA TING-HOPPER'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant Rita Ting-Hopper ("Ms. Hopper") by and through her undersigned counsel, has moved, pursuant to Fed. R. Civ. P. 12 (b) (6) and Fed. R. Civ. P. 9 (b), to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, or in the alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 56. Defendant submits the following Memorandum of Points and Authorities, and in support thereof states as follows:

## I.    BACKGROUND

This Complaint stems from Plaintiffs' default on the mortgage loan and the subsequent foreclosure proceedings as it relates to the real property identified in the Complaint. Plaintiffs claim they are not in default of the mortgage loan and the foreclosure proceedings were wrongful.

The Complaint contains five Counts: Count I - Violation of Real Estate Settlement Procedure Act (RESPA, 12 U.S.C. 2605) against Defendants SG Mortgage Securities, LLC, Wells Fargo Bank and ASC; Count II - Breach of Contract against Defendants SG Mortgage

Securities, LLC, US Bank National Association as Trustee for SG Mortgage Securities, Wells Fargo Bank and ASC; Count III - Violation of Fair Debt Collection Practice Act (15 U.S.C. § 1692) against Defendants Draper and Goldberg, PLLC and Darren Goldberg, Esq.; Count IV - Fraud, Intentional Misrepresentation against Defendants Rita Ting-Hopper, Esq., Darren Goldberg, Esq. and SG Mortgage Securities, LLC.

Only one claim is alleged against Ms. Hopper, Count IV- Fraud, Intentional Misrepresentation. To the extent that Plaintiffs only allege one claim (Count IV) against Ms. Hopper, this Motion to Dismiss will address Count IV only, as the remaining Counts I, II, III, and V should be dismissed accordingly.

Ms. Hopper as an individual was not involved in any of the allegations pled in Plaintiffs' Complaint. Ms. Hopper's involvement in this case is limited to her role as counsel for Defendants at two court hearings: 1) Telephonic Motion for Temporary Restraining Order on or about February 1, 2007; and 2) Preliminary Hearing held on February 16, 2007.

The only allegation pled against Ms. Hopper is contained in paragraph 8, page 3, and paragraph 52, incorrectly identified as paragraph 45, of the Complaint which state:

> "[Page 3] 8.  Defendant Rita Ting-Hopper is a Partner with the Law firm of Draper and Goldberg."

> "[52] 45.  Defendant Rita Ting-Hopper provided misleading and false information regarding the funds that Plaintiffs submitted directly to Defendant Draper & Goldberg, PLLC."

2

## II.    ARGUMENT

### A.    Standards Governing The Granting Of A Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted

A court may grant a motion to dismiss under Fed. R. Civ. P. 12 (b) (6) if it appears "beyond doubt" that the Plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the court must assume the truth of all relevant and material facts that are well pleaded and all inferences that can be reasonably drawn from those pleadings. *Id.* Plaintiffs are obliged to allege facts that satisfy each element required for a recovery under each theory in their claim, and cannot proceed on bald assertions and legal conclusions. See *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1007 (1995).

Pursuant to Fed. R. Civ. P. 56 (c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

### B.    The Complaint Fails to Set Forth a Claim for Fraud with Particularity.

The basic pleading requirements of Fed. R. Civ. P. Rule 8, require that a pleading contain "a short and plain statement of claim *showing that the pleader is entitled to relief.*"

Furthermore, Fed. R. Civ. P. Rule 9, states that all averments of fraud or mistake and the circumstances constituting fraud or mistake shall be stated with particularity.

Plaintiffs' Complaint alleged fraud against Ms. Hopper under Count IV. Paragraph 8 and 45 are the only two paragraphs pled addressing Ms. Hopper. Paragraph 8 falsely alleges that

3

Ms. Hopper is a partner to the law firm of Draper and Goldberg which, regardless of the veracity, is not a basis for fraud. The only allegation regarding misconduct against Ms. Hopper is found in paragraph 45 which states:

"Defendant Ting-Hopper provided misleading and false information regarding the funds that Plaintiffs submitted directly to Defendant Draper and Goldberg."

Plaintiffs failed to comply with the pleading requirements under Fed. R. Civ. P. Rule 8 and 9. Plaintiffs failed to identify what the alleged "misleading false information" was and most importantly, how and what types of damages Plaintiff suffered from the alleged "false information." Without meeting the pleading requirements, particularly for fraud, this claim must be dismissed. See *Atraqchi v.GUMC Unified Billing Services*, 788 A.2d 559, 2002 D.C. App. LEXIS 5 (2002).

In *Atraqchi*, the plaintiff alleged that certain "representations were false in fact and known to be false by the defendants at the time they were so made, and in truth and in fact they contain not only the doctor bill and hospital bill, but also a collection agency fee and interest [of] which the plaintiff was not aware." 788 A.2d at 561. In upholding the trial court's dismissal of the plaintiff's claim for fraud, the District of Columbia Court of Appeals set forth the following rationale:

> We turn next to count II of the amended complaint. Count II appears to allege "fraudulent conspiracy" and "false and fraudulent representations" regarding billing for medical services. Fraud claims are subject to strict pleading requirements:
>
> Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit. The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance

4

upon the representation . . . . One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient. Bennett v. Kiggins, 377 A.2d 57, 59-60 (D.C. 1977) citing, Super. Ct. Civ. R. (b) (remaining citations omitted), cert. Denied, 434 U.S. 1034, 54 L.Ed.2d 782, 98 S.Ct. 768 (1978).

Count II of the Atraqchis' amended complaint does not meet the pleading requirements of Bennett and Super. Ct. R. 9. Other than providing conclusory allegations, there are no facts in the complaint that would allow a court to draw an inference of fraud. 788 A.2d at 563. (emphasis supplied).

Similarly, in the present case, there are no facts alleged concerning what was fraudulent representation or any particularity as to fraud. Therefore, Plaintiff's claim for fraud must be dismissed.

**C.    Plaintiff Failed to State a Claim for Fraud Against an Individual Counsel**

Even if Plaintiffs properly pled a claim for Fraud against Defendant Hopper, the facts and allegations would fail to state a legal claim against Defendant Ms. Hopper as an individual and an attorney. Plaintiffs' claims involve a mortgage loan and foreclosure proceedings. Ms. Hopper is not involved with lending Plaintiff monies for the loan, nor servicing the loan, nor accounting for payments, nor initiating or proceeding with the foreclosure of the subject property. [1] A copy of the Hopper Affidavit is attached as Exhibit "1." The foreclosure action is authorized by the lender of the mortgage loan and the appointed Substitute Trustees are authorized to conduct the foreclosure sale. See Deed of Appointment of Substitute Trustees,

---

[1] Plaintiff incorrectly alleged in Plaintiff's Motion for Default Judgment that Ms. Hopper had the ability to initiate, conduct or authorize the subject Foreclosure Sale.

5

attached hereto as Exhibit "2." Ms. Hopper's involvement with this case is limited as her role as counsel for the Defendants on two court proceedings only.

The essential elements of fraud are (1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with intent to deceive (5) with action taken in reliance upon the representation. *United States v. Kiefer*, 97 U.S. App. D.C. 101 (D.C. Cir. 1955) citing *Pence v. United States*, 1942, 316 U.S. 332, 338, 62 S.Ct. 1080, 86 L.Ed. 1510.

In this case, Plaintiffs failed to allege that Ms. Hopper made any false representations with the intent to defraud them or made any representation for the purpose of defrauding the Plaintiffs and failed to show that they suffered harm based on the alleged misrepresentations.

Ms. Hopper's representations in this case were limited as counsel for Defendants on two court hearings. At both hearings, Ms. Hopper was never called as a witness making "factual representation" but appeared as counsel defending a Motion for Temporary Restraining Order and Preliminary Injunction to stop the foreclosure proceedings. As an officer of the court, Ms. Hopper made proper arguments and representations as counsel for Defendants. A true and correct copy of the transcript of the Hearing is attached as Exhibit "3." See also Exhibit "1," Affidavit of Rita Ting-Hopper.

Most importantly, Plaintiffs did not suffer any adverse rulings at both of the hearings attended by Ms. Hopper. See Exhibit "3," transcript. On or about February 1, 2007, the Court granted Plaintiff's request for Temporary Restraining Order. On or About February 16, 2007, the Court granted Plaintiff's request for injunction and the Restraining Order was extended for additional time. Since the Court granted Plaintiff's requests at those hearings, there cannot be

6

any damages against Ms. Hopper for any representations made at that time, regardless of the content of the representation.

Aside from her role as an attorney, Ms. Hopper is not involved in any of the allegations alleged in the Complaint. Plaintiffs failed to state any factual or legal basis which would substantiate a valid claim or damages against Ms. Hopper in the Complaint. Therefore, the Complaint should be dismissed with prejudice against Ms. Hopper, or in the alternative, Summary Judgment be granted in favor of Ms. Hopper.

## CONCLUSION

For all of the foregoing reasons, Defendant Ms. Hopper respectfully requests that the Court dismiss all claims with prejudice against Defendant Rita Ting-Hopper.

Respectfully Submitted,

/s/ James E. Clarke
James E. Clarke, Esq. #460826
L. Darren Goldberg #450336
Draper & Goldberg, PLLC
803 Sycolin Road, Suite 301
Leesburg, Virginia 20175
703-777-7101

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Defendant Rita Ting-Hopper's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment* and *Memorandum of Points and Authorities in Support of Defendant Rita Ting-Hopper's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment* was served via US First Class Mail and/or electronically, this ____ day of _____ , 2008 to the following:

James Edward Forde
Thacher Proffitt & Wood, LLP
Two World Financial Center
27th Floor
New York, New York 10281


Eric J. Hager
Thacher Proffitt & Wood, LLP
Two World Financial Center
27th Floor
New York, New York 10281


Thomas M. Hefferon
Goodwin Procter LLP
901 New York Avenue
Washington, DC 20001


Lucille Saundra White
White & Associates, PA
3540 Crain Highway
Suite 107
Bowie, Maryland 20716

                                        /s/ James E. Clarke
                                        _____
                                        James E. Clarke, Esq.

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JEAN AND MILDRED ANTOINE,    )
                             )
    Plaintiffs,              )
                             )
        v.                   )          Case No. 1:07-cv-01518
                             )
U.S. BANK NATIONAL ASSOCIATION,  )
TRUSTEE FOR SG MORTGAGE       )
SECURITIES, LLC, et al.,      )
                             )
    Defendants.              )
_____ )

## AFFIDAVIT OF RITA TING-HOPPER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

BE IT REMEMBERED that on this _____ day of _____ , 2008, before

me the undersigned subscriber, a Notary Public in and for the jurisdiction aforesaid, personally

appeared Rita Ting-Hopper, attorney, who made oath in due form of law as follows:

1.    I solemnly declare and affirm under the penalties of perjury and upon personal

      knowledge that the contents of the foregoing are true and correct to the best of my

      knowledge, information and belief.

2.    I am employed as an associate attorney at Draper and Goldberg, PLLC.

3.    I appeared as counsel for Defendants in the above captioned matter at two court

      proceedings:  1) Telephonic Motion for Temporary Restraining Order on or about

      February 1, 2007; and 2) Preliminary Hearing held on February 16, 2007.

4.    At both hearings, I was never called as a witness making "factual representation."

      Rather, I appeared as counsel defending a Motion for Temporary Restraining



Order and Preliminary Injunction to stop the foreclosure proceedings and made

proper arguments and representations as counsel for Defendants.

5.    On or about February 1, 2007, the Court granted Plaintiffs' request for a

Temporary Restraining Order.

6.    On or about February 16, 2007, the Court granted Plaintiffs' request for injunction

and the Restraining Order was extended for additional time.

7.    I am not involved with lending Plaintiffs monies for the subject loan, nor

servicing Plaintiffs' mortgage loan, nor accounting for payments, nor initiating or

proceeding with the foreclosure of the subject property.

_____
(Signature)

Printed Name: Rita Ting-Hopper
Title: Attorney at Law


The foregoing instrument was acknowledged before me this _14_ day of _January_ , 2008

by _Rita Ting - Hopper_ .


_____
Notary Public


My Commission expires: _May 31, 2009_

NICOLE BECKER
NOTARY PUBLIC
COMMONWEALTH
OF VIRGINIA
My Commission Expires
May 31, 2009

361443

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES is made effective this 2nd day of January, 2007 by U.S. Bank National Association, as Trustee for SG Mortgage Securities Asset Backed Certificates, Series 2006-FRE2 ("Beneficiary").

WHEREAS, the Beneficiary is the holder of a Note and Deed of Trust dated April 26, 2006, from Mildred Antoine and Jean Antoine to certain trustees named therein, and recorded among the land records of the District of Columbia, on May 4, 2006, at Instrument # 2006058417 ("Deed of Trust"); and

WHEREAS, the Deed of Trust encumbers real property known as 3196 18th St NE, Washington, DC 20018, and more particularly described as:

Lot numbered Twenty Six (26) in Square numbered Forty One Thirty Eight (4138) in John L. Kause's subdivision in Block numbered four (4) "Shrewood Addition to Brookland", as per plat recorded in Liber 64 at folio 167 in the Office of the Surveyor for the District of Columbia.

WHEREAS, the Deed of Trust grants to the beneficiary the unconditional power to appoint substitute trustees in place and stead of the original trustees named in the Deed of Trust and who desires to exercise the power to appoint substitute trustees in place and in stead of the Trustees and to vest the substitute trustees with same rights, powers, title and estate as are vested in the Trustees.

NOW, THEREFORE, in consideration of the sum of Five Dollars and 00/100 ($5.00), and other good and valuable consideration, the Beneficiary does hereby appoint L. Darren Goldberg as Substitute Trustee under the Deed of Trust, with identically the same title and estate in and to the land, premises and property conveyed by the Deed of Trust, and with all rights, powers, trusts and duties of the Trustee. L. Darren Goldberg is an attorney duly licensed to practice law in the District of Columbia and is in good standing with the District of Columbia Bar and whose office is located at 803 Sycolin Road, Suite 301, Leesburg, VA 20175.

IN WITNESS WHEREOF, the aforesaid owner and holder of the note hereby appoints, Sean Nix, its Vice President of Loan Documentation, as attorney-in-fact to execute and to acknowledge this deed as the act and deed of the party of the first part, which said attorney-in-fact, acting on behalf of said holder, has signed and sealed this deed on this 2nd day of January, 2007.

EXHIBIT

2

Deed of Appointment of Substitute Trustees
205860
Page 2

U.S. Bank National Association, as Trustee for SG

Mortgage Securities Asset Backed Certificates, Series

2006-FRE2 Wells Fargo Bank NA as its attorney in fact

By:        Name: Sean Nix
             Title: Vice President Loan Documentation

STATE OF  South Carolina

COUNTY OF York

        I hereby certify that on this 2nd day of  January, 2007, before me, the subscriber, a Notary
Public for the State and County aforesaid, personally appeared Sean Nix who acknowledged
himself/herself to be the Vice President Loan Documentation of U.S. Bank National Association, as
Trustee for SG Mortgage Securities Asset Backed Certificates, Series 2006-FRE2 Wells Fargo Bank
NA as its attorney in fact, and that as such Sean Nix_ having been authorized to do so, executed the
foregoing Deed of Appointment of Substitute Trustees for the purpose herein contained by signing, in
my presence, his/her name as Sean Nix of the .  He/She is personally known to me and did not take
an oath.

                                                    Notary Public

My commission expires:

Return To:
Draper & Goldberg, P.L.L.C.
803 Sycolin Road, Suite 301
Leesburg, VA 20175
205860
Lot 0026, Square 4138



OFFICIAL SEAL
Notary Public
State of South Carolina
RANDY P. JONES
My Commission Expires Sept 1, 2016

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

```
---------------------------X
                           :
JEAN ANTOINE, et al.,      :    Docket No.: CA688-07
                           :
          Plaintiff,       :
                           :
          vs.              :
                           :
SG MORTGAGE SECURITIES,    :
                           :
          Defendant.       :
                           :    Friday, February 16, 2007
---------------------------X    Washington, D.C.
```

The above-entitled action came on for a hearing before the Honorable MARY A. GOODEN-TERRELL, Associate Judge, in Courtroom Number 219.

APPEARANCES:

On behalf of the Plaintiff:

ANNA G. AITA, Esquire
Washington, D.C.

On behalf of the Defendant:

RITA TING-HOPPER, Esquire
Washington, D.C.

KERRYN T. ROWE                              07-1759
Official Court Transcriber        Telephone: 879-1757

EXHIBIT
3

```
 1                    P R O C E E D I N G S

 2              THE DEPUTY CLERK:  The Court calls number 26 on the

 3   calendar.

 4              (Pause.)

 5              THE COURT:  Okay, go ahead.

 6              THE DEPUTY CLERK:  I'm sorry.  Jean Antoine, et

 7   al., versus SG Mortgage Securities, civil action number 0688-

 8   07.

 9              Would the parties please come forth and identify

10   themselves for the record?

11              There is no jacket, Your Honor.

12              MS. AITA:  Good morning, Ann Gabriel Aita on behalf

13   of Mr. Jean Antoine and Mildred Antoine.  John Antoine is

14   present, Your Honor.

15              THE COURT:  Okay.

16              MS. TING-HOPPER:  Good morning.

17              MS. AITA:  Your Honor, I believe this is --

18              THE COURT:  Wait a minute.  Let the other party

19   introduce herself, okay?

20              MS. AITA:  Sure.

21              MS. TING-HOPPER:  Good morning, Your Honor.  My

22   name is Rita Ting-Hopper, and I'm here representing the

23   defendant in this matter.

24              THE COURT:  Okay.

25              This case was -- came in, I guess, as a TRO?
```

1          MS. AITA:  That's correct, Your Honor.

2          THE COURT:  And it was granted?

3          MS. AITA:  Yes, Your Honor.  And I have a certified

4   copy of that Order.

5          THE COURT:  Okay.

6          MS. AITA:  If Your Honor wishes to see it.

7          THE COURT:  What's this case about?  Because we

8   don't have the jacket.

9          MS. AITA:  Your Honor, this case is about a -- this

10  is a wrongful -- complaint for wrongful foreclosure and

11  equity that was filed by my client against SG Mortgages, who

12  are the listed trustees of a -- I'm sorry, who are listed as

13  the mortgage holders of a note on property that my client

14  owns.  And Draper and Goldberg, who is here, is also listed

15  as the trustees.

16          I can proffer for Your Honor a copy of the

17  foreclosure notice, or I could put my client under oath

18  and --

19          THE COURT:  Well, what are we here to do today?

20          MS. AITA:  -- introduce it that way.

21          Your Honor, at the temporary -- TRO hearing, His

22  Honor, Judge Tignor, and again, I have an -- I'm sorry, I

23  have the Order if Your Honor wishes to see it -- found that

24  this is about contested amounts on the, on the amount my

25  client allegedly owes.

3

1          The Cure Notice, if Your Honor wishes of me to

2    approach to --

3          THE COURT:  I'm trying to figure out, I'm asking,

4    what are we supposed to do today?

5          MS. AITA:  Your Honor, we're here on a preliminary

6    injunction.

7          THE COURT:  But we're not going to grant any --

8    what's the urgency right now?  Everything is on --

9          MS. AITA:  The urgency --

10         THE COURT:  -- is everything here on hold?

11         MS. AITA:  Your Honor, my client paid the cure

12   amount and Judge Tignor found that my client paid the cure

13   amount.  Actually, Your Honor --

14         THE COURT:  Well, he didn't find --

15         MS. AITA:  -- he paid --

16         THE COURT:  -- he just granted a Temporary

17   Restraining Order.

18         MS. TING-HOPPER:  Right.

19         MS. AITA:  He paid $2,536.76, more than the cure

20   amount, on the assurance that his mortgage would be

21   reinstated --

22         THE COURT:  Okay.  So where --

23         MS. AITA:  -- by Draper --

24         THE COURT:  -- is the property right now?

25         MS. AITA:  -- and Goldberg.  And since then, Your

4

```
 1   Honor, my client's mortgage has not been reinstated.  In
 2   fact, as you see --
 3             THE COURT:  Well, where is the property?
 4             MS. AITA:  The property is located at 3196 18th
 5   Street, Northeast, in Washington, D.C.
 6             THE COURT:  But I'm saying where -- but the
 7   property is not in Fort -- where -- who, who -- where is the
 8   property right now?
 9             MS. TING-HOPPER:  Your Honor --
10             MS. AITA:  The property right now, it's still
11   possibly scheduled for foreclosure.  I don't know for sure.
12   But I do know --
13             THE COURT:  But I'm saying, nothing can happen to
14   it --
15             MS. AITA:  -- that my client's --
16             THE COURT:  -- while -- but nothing can happen to
17   it while there's litigation.
18             MS. TING-HOPPER:  Your Honor?
19             MS. AITA:  Pardon me?
20             THE COURT:  Nothing can happen to the property
21   while there's a cloud over it in terms of litigation.
22   Nothing.
23             MS. TING-HOPPER:  May --
24             THE COURT:  Uh-huh?
25             MS. TING-HOPPER:  -- if I may respond to the
```

1    question, Your Honor?

2            The question asked of the status of what's -- where

3    the property is?  According to the previous Order, there is

4    nothing -- not anything happened to the property until today.

5    That Expiration Order is dated today.  So there's no

6    foreclosures now scheduled and there's no activity,

7    whatsoever, by the defendant.  But that Order expires today.

8            Upon a hearing today, which petitioner filed a

9    petition for preliminary injunction, which --

10            THE COURT:  And the Court is not gonna' -- what the

11    Court is gonna' do -- preliminary junction is just like a

12    trial, so we'll just set it down for a trial date.

13            MS. TING-HOPPER:  Your --

14            MS. AITA:  Your Honor, just again, for purposes of

15    my -- of our motion here, petition, we've received, as of

16    February 12th, after my client -- my client paid more than

17    the cure amount.

18            THE COURT:  I understand.  But we're --

19            MS. AITA:  And his mortgage --

20            THE COURT:  -- gonna' set it down --

21            MS. AITA:  -- hasn't been --

22            THE COURT:  -- for a trial date.  We can extend

23    this Temporary Restraining Order for another 60 days, because

24    everybody is on notice about it, and we'll set it down for

25    trial.

5

1    Is this a jury trial or is this a non-jury?

2    MS. AITA:  Your Honor, since this --

3    MS. TING-HOPPER:  Your Honor?

4    MS. AITA:  -- this is an equity, it would be a non-

5    jury trial.

6    THE COURT:  Okay.  So we need to just set a date.

7    MS. TING-HOPPER:  Your Honor, may I -- sorry.

8    THE COURT:  Yes?

9    MS. TING-HOPPER:  First of all, pursuant to the

10   Temporary Restraining Order that was signed by the Court

11   Order --

12   THE COURT:  Yes?

13   MS. TING-HOPPER:  -- there was supposed to be a

14   bond.  And according to Rule 65 of the D.C. Rules, an

15   injunction can only be issued if there was a posting of bond.

16   THE COURT:  But we haven't issued it yet.  Is this

17   a temporary -- was there a bond issued when Judge Tignor --

18   MS. TING-HOPPER:  Yes.

19   THE COURT:  -- issued it?

20   MS. TING-HOPPER:  And there was no bond posting

21   that I am aware of.

22   THE COURT:  Did he order one?

23   MS. TING-HOPPER:  Yes, he did.  And it was $500.

24   And if there is -- if this Court is wanting to continue the

25   injunction, another bond needs to be issued.

7

```
 1              THE COURT:  Not an injunction.

 2              MS. TING-HOPPER:  I mean, a Temporary Restraining

 3   Order, then another bond must be issued.

 4              But, apparently, plaintiff did not comply with the

 5   Court's Order, and according to the Rule 65, that must be

 6   done.  If he wants an injunction to the foreclosure sell,

 7   that must be done.

 8              THE COURT:  It's not an injunction.

 9              MS. TING-HOPPER:  If I can further clarify, this is

10   a preliminary injunction hearing is my understanding.

11              THE COURT:  Right.  And we're not granting the

12   preliminary injunction because we're going to set it down for

13   trial, because the trial --

14              MS. TING-HOPPER:  Oh, so it will be denied?

15              THE COURT:  No.  We're merging the preliminary

16   injunction request with the trial because they're the same.

17              MS. TING-HOPPER:  For further clarification and for

18   the Complaint, the Complaint was never served.  We're here

19   representing, for the record, I'm representing the defendant

20   for --

21              THE COURT:  They --

22              MS. TING-HOPPER:  -- the limited purpose --

23              THE COURT:   -- were not at the temporary

24   restraining argument?

25              MS. TING-HOPPER:  We consented to --- we actually
```

1   consented to just cancel the sell.  I was in contact with --

2   before the TRO was even heard, we already canceled the sell,

3   so it wasn't really necessary.  So we had -- we did -- a

4   foreclosure sell scheduled.  But once we realized that there

5   was a -- that plaintiff wanted to reinstate the loan, we said

6   we'll just cancel the sell.  So we actually consented to the

7   last TRO and asked the Court to just give it to them because

8   the sell is ready to be canceled.  There is really no -- it's

9   really a moot issue.  You can order us to restrain it, but we

10  already canceled it.

11          So we canceled the sell, allowed plaintiff to

12  reinstate his loan, and he never did so.  And the amount of

13  money that he claims to send is short.  It's --

14          THE COURT:  Those are all questions --

15          MS. TING-HOPPER:  -- that's for trial issues.

16          THE COURT:  -- those are all questions of fact.

17          MS. TING-HOPPER:  You're absolutely right, Your

18  Honor.

19          THE COURT:  Those are all questions of fact --

20          MS. TING-HOPPER:  But --

21          THE COURT:  -- which have to be resolved at trial.

22          MS. TING-HOPPER:  You're absolutely right, Your

23  Honor.  So if I can ask that a trial date be set, but have

24  the plaintiff properly served, through the findings in

25  accordance to Rule 4, and have that the preliminary

1   injunction be denied meanwhile --

2          THE COURT:  We're not denying it.

3          MS. TING-HOPPER:  -- because --

4          THE COURT:  We're merging it into the trial date.

5          MS. TING-HOPPER:  And then we requested that

6   additional bond be posted in the reinstatement amount of

7   $21,000.00.

8          Just for clarification, I don't -- I know that the

9   Court doesn't --

10          THE COURT:  Then you can file a motion to that

11   request and state the basis for why a bond needs to be set.

12          MS. TING-HOPPER:  Okay, Your Honor.  And just for

13   clarification, I know you don't have the Court docket, we did

14   file an opposition to the preliminary injunction.  We did

15   attach all of the exhibits, the Deed of Trust, the

16   reinstatement figures that we forwarded to the opposing

17   parties.  So, with respect to any statement that they

18   reinstated the loan, they have not --

19          THE COURT:  Like I said before, it's a question of

20   fact; it's a question for trial.

21          MS. TING-HOPPER:  Okay.

22          THE COURT:  It can't be resolved on both of you all

23   arguing back and forth.  It has -- it's gonna' take

24   testimonial evidence and exhibits and everything else to make

25   a determination what is actually going on in this case.  And

1  we will expedite it because --

2              MS. TING-HOPPER:  Thank you.

3              THE COURT:  -- we are merging the two.  So we just

4  need to look on it and see if we can get a date.

5              How much time will it take to try this matter?

6              MS. AITA:  Your Honor, I don't think it will take

7  more than about an hour and a half.  And it does, on my

8  notice, I'm listed here as Friday, May 11, 2007.  I think it

9  would be nice if we could conduct discovery before then.  I

10  believe we can resolve that.

11              THE COURT:  So you want it on track one?

12              MS. AITA:  We can do track one, Your Honor.

13              THE COURT:  How many witnesses do you think you're

14  going to have?

15              MS. AITA:  Probably no more than three.

16              THE COURT:  And you?

17              MS. TING-HOPPER:  No more than one.

18              THE COURT:  One.

19              MS. TING-HOPPER:  For clarification, plaintiff

20  still needs to serve, properly serve the defendants.  We have

21  not -- my clients have not been served.

22              The only service that they ever made was the TRO

23  and Complaint to a law office for the substitute trustees

24  that were conducting a foreclosure sell.  We are not

25  representatives or agents for the lender.

1              The lender that is listed as the proper defendant

2    has never been served.

3              THE COURT:  Who are the parties named in this case?

4              MS. AITA:  Your Honor, perhaps we can address that

5    as well.

6              First of all, it's -- SG Mortgage is the proper

7    party.  But if you look on the foreclosure notice, they're

8    represented by counsel.  Counsel happens to be Draper and

9    Goldberg.  And I do have this --

10             MS. TING-HOPPER:  That's absolutely right, but

11   counsel is not a registered agent.

12             THE COURT:  But it doesn't really matter.  If

13   they're represented by the attorney, that's who gets served.

14             MS. AITA:  Secondly, Your Honor --

15             MS. TING-HOPPER:  For the -- under Rule 4?

16             MS. AITA:  -- if I may be heard?

17             THE COURT:  Yes, that's who gets served.  But, I

18   mean, you can file a motion if you have an attorney, and the

19   attorney is representing them in this case, you serve the

20   attorney.

21             MS. AITA:  Your Honor, I also --

22             MS. TING-HOPPER:  Well, for the summons -- for the

23   summons --

24             MS. AITA:  -- have another letter.

25             MS. TING-HOPPER:  -- the summons --

1        THE COURT:  Wait, wait, wait.  I want to hear what

2    you say.

3        MS. AITA:  Sorry, Your Honor.

4        MS. TING-HOPPER:  -- under Rule 4, the summons and

5    complaint needs to be served to the defendant, to a

6    registered agent, or anybody who has authority to stop

7    service for the defendants.

8        THE COURT:  Which is the attorney.

9        MS. AITA:  Your Honor?

10       THE COURT:  Which is the attorney.

11       MS. AITA:  Thank you.  I also have the letter that

12   they sent to my client saying that they represent the

13   mortgage holder as well.

14       THE COURT:  Okay.  You want to show that to

15   counsel?

16       MS. AITA:  I believe that counsel --

17       MS. TING-HOPPER:  I provided counsel.  I

18   provided --

19       MS. AITA:  -- has a copy.

20       THE COURT:  Okay; very good then.

21       MS. TING-HOPPER:  -- the letters too.

22       THE COURT:  So -- so for the purpose of that,

23   service has been perfected, if these are the attorneys who

24   are representing the parties.

25       MS. AITA:  Thank you.  Thirdly, Your Honor, it was

                                                              13

1    properly served, and this could have been brought up at the

2    last hearing.  It's been waived.  And I've never heard of the

3    situation where you can't serve a represented party.  In

4    fact, that's the proper way to effect service.

5              THE COURT:  All right.  So the only thing we need

6    to do is put this on a track.

7              MS. AITA:  Your Honor, track --

8              THE COURT:  On the question of the bond --

9              MS. AITA:  -- one is appropriate.

10             THE COURT:  -- you can file a motion.

11             MS. TING-HOPPER:  Yes, Your Honor, I will.

12             THE COURT:  Okay.  And we can proceed.  Track one.

13             (Pause.)

14             MS. TING-HOPPER:  And the preliminary injunction

15   matter is merged?

16             THE COURT:  With the trial.

17             MS. TING-HOPPER:  With the trial.

18             MS. AITA:  Your Honor, just for our understanding,

19   that means that the TRO is still in effect?

20             THE COURT:  Yes.

21             MS. AITA:  Thank you.

22             MS. TING-HOPPER:  And, Your Honor, for another 60

23   days, as you previously stated?

24             THE COURT:  Yeah.  But it can -- it can continue to

25   be extended.  So if we don't go to trial within 60 days,

14

1  we'll continue it until we go to trial.

2          (Pause.)

3          THE COURT:  All right, thank you.

4          MS. TING-HOPPER:  Thank you.

5          MS. AITA:  Thank you, Your Honor.

6          THE COURT:  And, anytime, if you all want to -- we

7  can get the trial date now and you also can schedule

8  mediation at any time to see if you can get it resolved.

9          MS. TING-HOPPER:  Can we get a trial date now?

10          MS. AITA:  Your Honor, that would be absolutely

11  wonderful.

12          THE COURT:  You know, and I would --

13          MS. AITA:  And in the event things --

14          THE COURT:  -- and I would suggest, Mr. Lorentz, if

15  you want to schedule mediation, we would get a mediation date

16  today also.

17          MS. AITA:  Your Honor, in the event things resolve,

18  we'll also let the Court know.

19          THE COURT:  Thank you.

20          MS. TING-HOPPER:  Your Honor, can we get a trial

21  date?

22          THE COURT:  You're gonna' get a trial date and a

23  mediation date.

24          MS. TING-HOPPER:  Okay.

25          (Pause.)

1          THE COURT:  Won't you all have a seat while they're

2     trying to get this computer to give us a date?

3          MS. AITA:  All right.

4          MS. TING-HOPPER:  Thank you.

5          THE DEPUTY CLERK:  Okay, we got it now.

6          THE COURT:  Oh, you got it?  Okay.

7          (Pause.)

8          THE DEPUTY CLERK:  The mediation can be scheduled

9     for April 9th.  Would you prefer 9:00, 11:00, or 1:00?

10         MS. AITA:  11:00 is perfect.

11         THE DEPUTY CLERK:  For you Counsel for defense?

12         MS. TING-HOPPER:  11:00.

13         THE DEPUTY CLERK:  Okay.

14         MS. TING-HOPPER:  Actually, I don't have my

15    calendar.  Do you know what day April 9th is?  A Monday?

16         THE DEPUTY CLERK:  If you need to reschedule, we

17    can reschedule.  But we'll just -- we'll just select this

18    date.

19         MS. TING-HOPPER:  11:00 is fine.

20         THE DEPUTY CLERK:  Okay.

21         MS. TING-HOPPER:  Thank you.

22         (Pause.)

23         MS. AITA:  Would you know which room that the

24    mediation will be scheduled?

25         THE DEPUTY CLERK:  You'll have to call the

16

1   Mediation Center because I'm not sure where they have the

2   mediation.  But it may actually tell you on the notice that

3   you get.

4           MS. AITA:  Okay.

5           (Pause.)

6           THE DEPUTY CLERK:  June 18th?

7           MS. AITA:  Perfect for us.

8           THE DEPUTY CLERK:  Excuse me?

9           MS. AITA:  It's perfect for us.

10          MS. TING-HOPPER:  It's fine.

11          THE DEPUTY CLERK:  Trial is on 9:30 a.m.

12          THE COURT:  There's a medical malpractice.  Is that

13  going away?

14          (Thereupon, the Court and the Deputy Clerk

15  conferred.)

16          MS. AITA:  Madam Clerk, would that be this

17  courtroom?

18          THE DEPUTY CLERK:  Yes, it would be.  But,

19  actually, I'm going to change that date from June.  I'm going

20  to change that date.

21          (Pause.)

22          THE DEPUTY CLERK:  We'll have to do August.  We'll

23  have to do August 27th, I'm sorry.  August 27th.  (Pause.)

24  Yeah, okay.

25          MS. TING-HOPPER:  That's the earliest trial date

17

1    available?

2              THE DEPUTY CLERK:  That's the earliest trial date

3    available.

4              MS. AITA:  It works for --

5              THE DEPUTY CLERK:  And the reason I had to change

6    it was because, when I looked at your Scheduling Order, you

7    won't even have filed motions by June.  So I'm going by the

8    scheduling track that you have.  You have to have trial after

9    those deadlines.

10             MS. TING-HOPPER:  Right, right, right.

11             THE DEPUTY CLERK:  Right.

12             MS. AITA:  Madam Clerk, so that's August 28th?

13             THE DEPUTY CLERK:  August 27th.

14             MS. AITA:  27th.  And that's at 9:30?

15             THE DEPUTY CLERK:  At 9:30 in this courtroom.

16             MS. TING-HOPPER:  Your Honor, given the late date

17   of the trial, I thought we'd get an early one to revisit the

18   injunction in Rule 65 and posting bond.

19             Right now, the current situation is that

20   plaintiff's been living at the property without making any

21   mortgage payments since September of last year.  So, if it's

22   going to be postponed, or scheduled for August, he'd

23   basically be making no mortgage payments.  He's seven months

24   past due until another eight -- seven months, over 12 months.

25             So we request that a bond be posted for the amount

1    of the duration, until August 27th of this year, for his

2    mortgage payments.

3                THE COURT:  I -- I --

4                MS. AITA:  Your Honor, that's incorrect.  First of

5    all, we've made a payment as recently as February 5th.

6                THE COURT:  That's what I'm saying.  As long as

7    he's making the regular payments during the course; he

8    continue to make payments.

9                MS. TING-HOPPER:  Your Honor, but the payments --

10               MS. AITA:  And he made a payment.

11               MS. TING-HOPPER:  -- he made is always short.  He

12   owes over $21,000.  He keeps sending us short change of

13   whatever he has, which is not to the contractual terms of the

14   Note and Deed of Trust.

15               If this Court -- supersedes the contractual right

16   to my client, we just simply ask --

17               THE COURT:  We're not superseding.  That's what's

18   in dispute.  That's why we're going to trial.

19               MS. TING-HOPPER:  That's correct.  And all we're

20   asking --

21               THE COURT:  Well that's why you're going to file

22   your motion --

23               MS. TING-HOPPER:  Okay.

24               THE COURT:   -- in court, and then --

25               MS. TING-HOPPER:  And I was hoping, pursuant to the

19

1   Rule, it's clear that an injunction shall not be issued until

2   the bond be posted.  I was hoping the Court would consider

3   posting --

4           THE COURT:  We haven't issued an injunction.

5           MS. TING-HOPPER:  I thought that the Court was

6   going to continue the injunction to --

7           THE COURT:  It's a Temporary Restraining Order.

8           MS. TING-HOPPER:  Oh, you're going to continue --

9   yes.

10          Also, in Rule 65, if you're gonna' continue,

11  continue a Temporary Restraining Order --

12          THE COURT:  File your motion, Counsel.

13          MS. TING-HOPPER:  Okay.

14          THE COURT:  File it.

15          MS. TING-HOPPER:  If the Court --

16          THE COURT:  And give the other side --

17          MS. TING-HOPPER:  -- will not consider it today --

18          THE COURT:  -- an opportunity --

19          MS. TING-HOPPER:  -- then I will --

20          THE COURT:  -- and give the opportunity -- an

21  opportunity to the --

22          MS. TING-HOPPER:  I will hoping --

23          THE COURT:  -- other side --

24          MS. TING-HOPPER:  -- that the Court would make a

25  ruling --

```
 1              THE COURT:  -- to respond --

 2              MS. TING-HOPPER:  -- on that.

 3              THE COURT:  -- so I could make a ruling based on

 4   something --

 5              MS. TING-HOPPER:  I will, Your Honor.

 6              THE COURT:  -- other than you all just talking.

 7         All right, thank you.

 8              MS. AITA:  Thank you, Your Honor.

 9              THE COURT:  So the sooner you get it filed, the

10   sooner the Court can rule.

11              MS. TING-HOPPER:  I will, Your Honor.

12              THE COURT:  Okay.

13              MS. AITA:  Thank you.

14              THE COURT:  Thank you.

15              MR. ANTOINE:  Thank you, Your Honor.  I've been

16   making all of my payments, Your Honor, still.

17              THE COURT:  Let your attorney speak for you.

18              MS. AITA:  Thank you, Your Honor.

19              (Thereupon, the proceedings were concluded.)

20                          *  *  *  *

21

22

23

24

25
```

1          CERTIFICATE OF TRANSCRIBER

2

3          I, KERRYN T. ROWE, an Official Court Transcriber

4    for the Superior Court of the District of Columbia, do hereby

5    certify that, in my official capacity, I prepared from

6    electronic recordings the proceedings had and testimony

7    adduced in the matter of JEAN ANTOINE, et al., v. SG MORTGAGE

8    SECURITIES, Docket Number: CA688-07, in said Court, on the

9    16TH day of February, 2007.

10         I further certify that the foregoing 21 pages were

11   transcribed to the best of my ability from said recordings.

12         In witness whereof, I have subscribed my name this

13   the 3rd day of July, 2007.

14

15

16                              _____

17                              OFFICIAL COURT TRANSCRIBER

18

19

20

21

22

23

24

25

                                                            22