UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEAN AND MILDRED ANTOINE, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-1518 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 14, 17 |
| | : | | |
| U.S. BANK NATIONAL ASSOCIATION *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT;
GRANTING DEFENDANT'S MOTION TO DISMISS FRAUD CLAIM WITHOUT PREJUDICE**

**I. INTRODUCTION**

This case comes before the court on the plaintiffs' motion for default judgment and defendant Rita Ting-Hopper's motion to dismiss, or in the alternative, motion for summary judgment. The plaintiffs, Jean and Mildred Antoine, allege that the defendants, U.S. Bank Association; SG Mortgage Securities, LLC; Wells Fargo Bank National Association; America's Servicing Company, DBA; Draper & Goldberg, PLLC; L. Darren Goldberg; and Rita Ting-Hopper, violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; and the District of Columbia Consumer Protection Practice Act, D.C. Code § 28-3901; and committed breach of contract, fraud, intentional misrepresentation and breach of fiduciary duty. The plaintiffs' claims arise from the alleged wrongful foreclosure of their real property located in Washington, D.C.

The court denies the plaintiffs' motion for default judgment, because they failed to request an entry of default from the Clerk of the Court. The court grants, without prejudice, defendant Ting-Hopper's motion to dismiss the plaintiffs' fraud claim, because the plaintiffs fail to plead their claim with particularity against her.

## II. BACKGROUND

### A. Factual History

The following facts are undisputed. In 2006, the plaintiffs owned the real property located at 3196 18th Street, N.E. in Washington, D.C. Compl. ¶ 12.[1] The plaintiffs obtained two mortgages on their real property from Fremont Investment and Loan ("Fremont"). *Id.* ¶ 13. On August 6, 2006, Fremont sold the plaintiffs' mortgages to SG Mortgage Securities, LLC ("SG Mortgage"), which designated Wells Fargo Bank National Association ("Wells Fargo") as the master servicer. *Id.* ¶ 15. Wells Fargo later delegated its servicing functions to its subsidiary, America's Servicing Company ("ASC"). *Id.*

The plaintiffs continued making payments to Fremont for the months of September, October, and November 2006. *Id.* ¶ 17. On November 3, 2006, the plaintiffs received a letter from ASC informing them that both of their mortgages were in default and that they had accrued late fees and other default charges. *Id.* ¶¶ 17-18. After disputing the additional charges without success, the plaintiffs received a letter from ASC's law firm, Draper & Goldberg, PLLC ("Draper PLLC"), stating that the minimum balance required to cure the default obligations was $10,658.92. *Id.* ¶ 21. The letter also included a notice of foreclosure and signaled that L. Darren Goldberg ("Goldberg") was the designated contact person to stop the foreclosure sale. *Id.*

In early January 2007, a Draper PLLC employee informed the plaintiffs' counsel, via telephone, that the reinstatement amount for both the first and second mortgages was $16,994.70. *Id.* ¶ 22. When the plaintiffs' counsel requested that Draper PLLC send her the reinstatement amounts in writing and cease communicating directly with the plaintiffs, Draper

---

1  The plaintiffs' complaint contains several formatting errors and incorrectly enumerates the factual allegations. Therefore, the court has re-numbered the plaintiff's complaint starting after paragraph 8 on page 3. The paragraphs that plaintiffs had previously numbered as 17-22 are now paragraphs 23-29. Similarly, plaintiffs' paragraphs 42(b), 45, 47, 48, and 51 are now paragraphs 49(b), 52, 54, 55, and 58, respectively.

PLLC failed to do so. *Id.* ¶ 23. On January 29, 2007, the plaintiffs submitted a cashier's check for $13,195.68 to satisfy the first mortgage. *Id.* One day later, Draper PLLC sent the plaintiffs a second notice of foreclosure indicating that the foreclosure sale would occur on February 1, 2007 at 10:03 a.m. *Id.* ¶ 24. On February 5, 2007, the plaintiffs submitted a second cashier's check for $3,799.02 to satisfy the second mortgage. *Id.* ¶ 23.

Three days prior to the scheduled foreclosure sale, the plaintiffs filed a petition for a permanent injunction against SG Mortgage in the Superior Court for the District of Columbia. *Id.* On February 1, 2007, the Superior Court granted a temporary restraining order ("TRO") until February 16, 2007 and later extended it for sixty (60) days or until the matter was resolved. *Id.* ¶ 25. Notwithstanding the TRO, Draper PLLC mailed a third notice of foreclosure to the plaintiffs on April 30, 2007 setting the foreclosure sale for June 7, 2007. *Id.* ¶ 26. On May 31, 2007, the plaintiffs filed a contempt motion and requested an emergency hearing, but the court did not schedule such a hearing. *Id.* ¶ 27. Finally, on June 7, 2007, Draper PLLC foreclosed on the plaintiffs' real property. *Id.* ¶ 28.

## B. Procedural History

Two months after the June 7, 2007 foreclosure sale, the plaintiffs filed the present complaint. On August 28, 2007, the plaintiffs served defendants Draper PLLC and Goldberg with process at the law offices of Draper PLLC. Pls.' Mot. for Default J. ("Pls.' Mot.") at 2. The plaintiffs also attempted to serve defendants U.S. Bank and Ting-Hopper by giving a copy of the complaint and summons to Goldberg, but he refused to accept the service documents. *Id.* On September 14, 2007, the plaintiffs served defendants U.S. Bank, SG Mortgage Securities, Wells Fargo and ASC. *Id.* A week later, the process server attempted to serve Ting-Hopper again at the law offices of Draper PLLC, but the receptionist refused to accept the service

documents, claiming that Ting-Hopper was unavailable. *Id.* at 3. On October 17, 2007, the process server attempted to serve Ting-Hopper at her residence but no one answered the door. *Id.* The next day, the process server mailed a copy of the complaint and summons to Ting-Hopper's current address by priority mail. *Id.* On December 28, 2006, the plaintiffs filed a motion for default judgment claiming that Ting-Hopper had failed to file an answer within 20 days of being served with process. *See generally* Pls.' Mot. On January 15, 2007, after acknowledging that she received the motion for default judgment but not the initial service of process at her residence, Ting-Hopper filed a motion to dismiss or, in the alternative, a motion for summary judgment. The court first addresses the plaintiffs' motion for default judgment and then turns to the defendant's motion to dismiss.

### III. ANALYSIS

#### A. Legal Standard for Entry of Default Judgment under Rule 55(b)(2)

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). Upon request of the party entitled to default, Rule 55(b) (2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. FED. R. CIV. P. 55(b) (2).

Because courts strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir.

1980). Accordingly, default judgment usually is available "only when the adversary process has been halted because of an essentially unresponsive party[, as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id*. at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

### B. The Court Denies the Plaintiffs' Motion for Default Judgment

The plaintiffs move for a default judgment against defendant Ting-Hopper because she failed to serve her answer by November 7, 2007, the statutory 20-day deadline by which to file a responsive pleading or motion. Pls.' Mot. at 5. The defendant argues that she did not receive a copy of the complaint or the summons that the plaintiffs allegedly sent on October 18, 2007 by priority mail. Def.'s Opp'n to Pls.' Mot. for Default J. ("Def.'s Opp'n") at 1. The defendant also asserts that the court must deny the plaintiffs' motion for a default judgment because the Clerk of the Court has not filed an entry of default. *Id.* at 2.

The defendant's latter assertion is correct. Before the court can grant a motion for default judgment, the plaintiffs must comply with the two-step process provided in Federal Rule of Civil Procedure 55 whereby a plaintiff first seeks an entry of default from the Clerk of the Court, then a default judgment from the court itself. FED. R. CIV. P. 55; *see Carvajal v. Drug Enforcement Agency*, 246 F.R.D. 374, 376 n.2 (D.D.C. 2007) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986)). "By ignoring this path, the plaintiff[s] recklessly shortcut the defendant['s] procedural protections." *Carvajal*, 246 F.R.D. at 376 n.2. Because the plaintiffs did not seek an entry of default from the Clerk of the Court before filing their motion for default judgment, and because the defendant has now responded to the complaint, the court denies the plaintiffs' motion for default judgment.

### C. Legal Standard for a Rule 9(b) Motion to Dismiss

Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value. *Shields v. Wash. Bancorp.*, 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992) (Lamberth, J.); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted)); *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (recognizing that Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged fraud); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (same).

Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981). In other words, Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. den'd*, 498 U.S. 941 (1990) (requiring the pleader to provide the equivalent of a "first paragraph of any newspaper story"). Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the

opponent's control, accompanied by a statement of the facts on which the pleader bases his claim. *Kowal*, 16 F.3d at 1279 n.3.

That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct. *Id*. at 1278 (citing *Cannon*, 642 F.2d at 1385); FED. R. CIV. P. 8. Rule 9(b) simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked. *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). Additionally, while the court must take as true all allegations of material fact and construe them in the light most favorable to the pleader in resolving a Rule 9(b) challenge, the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim. *Kowal*, 16 F.3d at 1278 (citing *Wool v. Tandem*, 818 F.2d 1433, 1439 (9th Cir. 1987)); *Shields*, 1992 WL 88004, at *7; *see also One-O-One Enters., Inc. v. Caruso*, 668 F. Supp. 693, 697-99 (D.D.C. 1987) (Richey, J.), *aff'd*, 848 F.2d 1283 (D.C. Cir. 1988) (explaining that the pleader must allege with particularity the alleged fraud to survive a Rule 9(b) motion).

Where a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud). Accordingly, the court should reserve dismissal with prejudice for "extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." *Shields*, 1992 WL 88004, at *5.

### E. The Court Dismisses Count IV as Raised against Defendant Ting-Hopper

The sole charge levied by the plaintiffs against defendant Ting-Hopper appears in Count IV, in which the plaintiffs raise a claim of fraud and intentional misrepresentation against her, Darren Goldberg and SG Mortgage Securities. Compl. ¶ 52. Defendant Ting-Hopper argues that the plaintiffs fail to plead fraud against her individually with requisite particularity. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 4. She insists that her involvement in the plaintiffs' case was limited to her role as counsel for two court hearings on February 1, 2007, and February 16, 2007, where she made only proper arguments and representations on behalf of ASC and Draper PLLC. *Id.* at 2, 6.

In their complaint, the plaintiffs allege vaguely that the defendant provided misleading and false information regarding the funds that they submitted directly to Draper PLLC. Compl. ¶ 52. In their opposition, the plaintiffs maintain that they listed the time, place and content of the defendant's false misrepresentations in paragraphs 23-29, 49(b), 52, 54-55 and 58 of their complaint. Pls.' Opp'n at 10.

To plead fraud with particularity, the plaintiffs must specify the circumstances constituting the defendant's allegedly fraudulent behavior. *Page v. Comert*, 243 F.2d 245, 246 (D.C. Cir. 1957). "At common law, the requisite elements of fraud are (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; and (5) an action that is taken in reliance upon the representation." *Daskalea v. Wash. Humane Soc'y*, 480 F. Supp. 2d 16, 37 (D.D.C. 2007) (quoting *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005)).

The plaintiff's complaint contains only two specific references to defendant Ting-Hopper. The first, paragraph 8, only asserts that Ting-Hopper is a partner at Draper PLLC.

Compl. ¶ 8. The defendant insists that this is a mistake: she is only an associate at Draper. Def.'s Mot., Ex. 1 ("Ting-Hopper Aff.") ¶ 2. The second reference, paragraph 52, alleges that Ting-Hopper "provided misleading and false information regarding the funds that Plaintiffs submitted directly to Defendant Draper & Goldberg, PLLC." Compl. ¶ 52. Yet, neither one of these references provides specific details about the circumstances constituting *her* allegedly fraudulent behavior. *See Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543, 554 (E.D.N.C. 2005) (dismissing fraud claim against law firm and attorneys that pleaded time, place, and content of alleged misrepresentation in debt collection activity but not identity of particular person making alleged misrepresentation).

In fact, the plaintiffs fail to support their fraud claim against the defendant in their complaint altogether. For instance, paragraphs 23-29 allege that Draper PLLC failed to remit the written reinstatement figures to the plaintiffs and include details about Draper PLLC's activity leading to the June 7, 2007 foreclosure sale of the plaintiffs' real estate. Compl. ¶¶ 23-29. Even if this could be construed as fraudulent activity rather than a cause for action under the FDCPA, the plaintiffs do not specifically mention Ting-Hopper's alleged involvement in this section. *Id.* In their opposition, the plaintiffs argue that Ting-Hopper, as an employee of Draper PLLC, was a debt collector subject to act in accordance with the FDCPA, and, therefore, the allegations and claims raised against Draper should be construed as raised against her.[2] Pls.' Opp'n at 8. But even if the plaintiffs' complaint sufficiently states a fraud claim against Draper PLLC, they must

---

2    The court does not agree that the plaintiffs have successfully pleaded an FDCPA claim against Ting-Hopper. While such a claim does not require particularized pleading, it does require, at a minimum, that the plaintiff identify the defendant individually, in the complaint, as a "debt collector," beyond mere conclusory allegation. *Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006); *In re Crippen*, 346 B.R. 115, 118 (E.D. Pa. 2006). If the plaintiffs wish to raise an FDCPA claim as well as a fraud claim against Ting-Hopper, they must do so in an amended complaint.

9

plead specific and separate allegations of fraud against Ting-Hopper to succeed against her as an individual defendant. *See* 2 FED. PRAC. 3d § 9.03[1][f] (stating that when the plaintiffs' claim involves multiple defending parties, they must make specific and separate allegations against each defendant); *see, e.g.*, *Knowles v. I.C. System, Inc.*, 1991 WL 5182, at *1 (W.D.N.Y. Jan. 14, 1991) (dismissing fraud claim that did not indicate which statements made were fraudulent or upon what information or belief plaintiff asserted claim); *Tucker v. Bank One, N.A.*, 265 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (dismissing claim alleging merely that defendants committed fraud by "advancing writings" they knew to be false to "Clark County Recorder, which resulted in an invalid judgment").

In paragraph 49(b) under Count III, the plaintiffs allege that defendants Draper PLLC and Goldberg failed to remit the plaintiffs' payment to ASC. Compl. ¶ 49(b). Again, there is no mention of Ting-Hopper or a specific allegation that she was involved in her co-defendants' allegedly fraudulent activity. *Cf. Del Campo v. Kennedy*, 491 F. Supp. 2d 891, 904-05 (N.D. Cal. 2006) (excusing failure to attribute fraudulent action to individual defendant when plaintiff proceeded under a "group published document" theory in which allegedly fraudulent document could not be attributed to single individual). Likewise, paragraphs 54, 55, and 58 under Count 4 make only mention Ting-Hopper's co-defendants' activities. Compl. ¶¶ 54-55, 58.

As stated previously, Paragraphs 8 and 52 are the only sections where the plaintiffs identify Ting-Hopper as an individual defendant. The plaintiffs' allegations in paragraphs 8 and 52, without more, are insufficient because they fail to include facts outlining the "who, what, when, where, and how" with respect to the fraud claim against Ting-Hopper. *DiLeo*, 901 F.2d at 627. In their opposition, the plaintiffs, citing to evidence outside the pleadings, produce a vast catalogue of alleged misrepresentations, but this only proves by contrast the meagerness of the

allegations in the complaint. *See Calderon v. Kansas Dep't of Social and Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999) (distinguishing between opposition to motion to dismiss and motion for leave to amend complaint). Furthermore, while the plaintiffs adduce a transcript[3] of the emergency hearing on the temporary restraining order purporting to contain misrepresentations made by Ting-Hopper to the Superior Court, the plaintiffs explain neither how these statements prejudiced them, as the court ruled in their favor, nor how they detrimentally relied on Ting-Hopper's statements. Pl.'s Opp'n at 10-13 (failing to connect alleged misrepresentations to court with injury to plaintiffs resulting from their detrimental reliance thereon); *Hayes v. Chartered Health Plan*, 2006 WL 2983013, at *2 (D.D.C. Oct. 17, 2006) (setting forth elements of fraud in the District of Columbia, including detrimental reliance by plaintiff).

As a result, the plaintiffs' claims against the defendant fall short of Rule 9(b)'s requirement that the "pleader state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).[4] Without specific allegations, the court cannot draw conclusions based on mere information and belief. *See Kowal*, 16 F.3d at 1279 n.3 (noting that "pleadings based on information and belief require an allegation that the necessary information lies within the defendant's control, and that such allegations must also be accompanied by a statement of the facts upon which the allegations are based").

---

[3] A court may take judicial notice of a matter of public record without converting a motion to dismiss into a motion for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (considering public court documents filed in earlier State court proceeding).

[4] In their opposition, the plaintiffs attach 13 exhibits to support allegations of fraudulent actions taken by Ting-Hopper that were not specifically raised in the complaint. Pls.' Opp'n, Exs. 1-13. Because these constitute extrinsic evidence, which the court will not consider at this stage of the proceedings, the court limits its analysis to the pleadings. *Powers-Bunce v. District of Columbia*, 2008 WL 803640, at *4 (D.D.C. Mar. 27, 2008).

Because the plaintiffs fail to plead with particularity as to Ting-Hopper's involvement in Draper PLLC's alleged fraudulent activity, the court grants, without prejudice, defendant Ting-Hopper's motion to dismiss the plaintiffs' fraud claim against her. The plaintiffs may file a motion for leave to amend their complaint to properly plead a fraud claim, but they must be sure to articulate the "who, what, when, where, and how" with respect to the circumstances of the fraud, paying particular attention to connecting each alleged material misrepresentation to a particular defendant and a particular injury to the plaintiff. Each claim must contain the requisite elements of fraud, namely, (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; (5) resulting in detrimental reliance by the plaintiff. *Hayes*, 2006 WL 2983013, at *2.

### IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for default judgment and grants, without prejudice, the defendant's motion to dismiss the plaintiffs' fraud claim against her. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of April 2008.

RICARDO M. URBINA
United States District Judge